IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:19cr455-1 |
| | ) | |
| TAMORK CORNELIOUS ATKINS | ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion by Defendant Tamork Cornelious Atkins to suppress evidence seized during the search of his residence by officers of the Burlington (North Carolina) Police Department ("BPD"). (Doc. 16.) The search was conducted pursuant to warrants issued by North Carolina Superior Court Judges on May 28, 2019 (Doc. 16-1) and May 29, 2019 (Doc. 16-2). Atkins contends that the State judges lacked probable cause to issue the warrants and that the search was not conducted within the "good faith" exception of United States v. Leon, 468 U.S. 897 (1984). The Government responded to the motions (Doc. 33), and a hearing was held on March 12, 2020. For the reasons set forth herein, the motion is denied.

I.  BACKGROUND

The parties agreed at the hearing that the motion to suppress turns on the facts set out in the affidavits supporting both applications for search warrants, which are undisputed.

The May 28, 2019 application is fourteen pages and contains nineteen paragraphs of probable cause statements. In short, BPD Investigator W.C. Walker, a seven-year veteran of the BPD assigned to the narcotics enforcement team, set out facts tending to show that marijuana and cocaine were being sold by Atkins, a felon, from a residence at 1294 Aster Way in Burlington, North Carolina, and that a firearm was possessed by him there. Seven trash pulls from the residence from November 27, 2018, through April 25, 2019, revealed scores of torn plastic baggie corners (used in drug trafficking) "with marijuana remnants," mail addressed to residents who were known to BPD as drug traffickers, some baggie corners with "white powder residue," "the odor of cocaine," a vacuum sealed bag with the "odor of marijuana inside" that is commonly used for large quantities of drugs, and a "[s]mall brown marijuana roach/cigarette." (Doc. 16-1.) The affidavit also detailed surveillance over that same period of time where Atkins would make several short trips in a vehicle, and then return to the residence, even though he had no legal job; Atkins was observed conducting short meetings consistent with drug deals in parking lots and open areas. Wiretaps from a March 28, 2019 order revealed calls to known drug dealers from phones used by Atkins, as well as discussions of the prices for drugs, including $33,000 for a kilogram of cocaine, and Atkins's statements that

he possessed a firearm "for his own personal protection." (Id.) A drug supplier was observed meeting Atkins at the residence with what appeared to be bulk currency following intercepted phone calls. Finally, the affidavit noted Atkins's previous convictions qualifying him as a felon. The application described the residence and vehicles to be searched, as well as Atkins. Among the items to be seized were firearms, U.S. currency, "[i]tems evidencing illegal narcotics sales," photographs, phones, and documents relating to "controlled substances." (Id. at 16.)

The warrant was signed by Detective Walker at 5:03 p.m. on May 28, 2019, and approved by a Superior Court judge on that same day.

At 10:17 a.m. on May 29, 2019, Detective Walker applied for a second search warrant. In his affidavit, he noted that while conducting surveillance of Atkins's residence in an attempt to serve (and before serving) the May 28 warrant, investigators observed Atkins leaving the residence in one of his vehicles. A traffic stop was conducted, and Atkins "threw several ounces of cocaine out of the car." (Doc. 16-2 at 4.) Moreover, when investigators seized the residence to serve the warrant, "[t]here was . . . the odor of marijuana emitting from inside the residence." (Id.) Detective Walker requested that the May 28 search warrant be amended "to search for cocaine, marijuana,

3

and any other controlled substance." The items requested to be seized were the same as those on the May 28 application, with the addition of "[c]ocaine, marijuana and any other controlled substances." (Id. at 6.) A different Superior Court judge issued the search warrant at 10:33 a.m.

Atkins seeks to suppress any controlled substances and firearms seized from the search of his residence.

## II. ANALYSIS

When officers conduct a search and seizure pursuant to a warrant, the defendant has the burden of proving by a preponderance of the evidence that suppression is warranted. United States v. Hazelwood, Nos. 1:08cr00225-1, 1:08cr00225-2, 2008 WL 9462825, at *4 (M.D.N.C. Sept. 26, 2008), aff'd 412 F. App'x 617 (4th Cir. 2011); see, e.g., United States v. Matlock, 415 U.S. 164, 177 n.14 (1974); United States v. Simons, 107 F. Supp. 2d 703, 705 (E.D. Va. 2000), aff'd 5 F. App'x 332 (4th Cir. 2001).

### A. Validity of the Search Warrant

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Courts apply a "totality of the circumstances" analysis to determine if probable cause exists to support a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). "When a search is conducted pursuant to a warrant, the determination of probable cause by

4

the magistrate who issued the warrant is entitled to 'great deference.'" United States v. Randolph, 261 F. App'x 622, 624 (4th Cir. 2008) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)).[1]  A reviewing court need only determine "whether there is substantial evidence in the record" supporting the decision to issue the warrant.  Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam).  The basis for probable cause may be established in a written affidavit or in sworn statements before the magistrate judge.  United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994).  In reviewing a probable cause determination, a court must consider only "the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

A search warrant must also "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "An erroneous description in the warrant . . . does not necessarily invalidate a warrant and subsequent search. . . . [L]imitations on the execution of search warrants should be examined in light of the need to allow some latitude for honest mistakes."  United States v. Owens, 848 F.2d 462, 463-64 (4th Cir. 1988) (internal quotation marks and

---

[1] Unpublished decisions of the Fourth Circuit are not precedential but are generally entitled only to the weight of their persuasive reasoning.  See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).  They are cited herein for that purpose.

citations omitted).

Atkins challenges the description of the items seized, contending that the May 28 warrant failed to list any controlled substances, and that both the May 28 and May 29 warrants, the latter of which corrected that omission, lacked probable cause.[2] Atkins also argues that upon the BPD's receipt of the May 29 search warrant, the May 28 search warrant became invalid.

On the probable cause issue, a search warrant must demonstrate a sufficient nexus between the criminal conduct, the items to be seized, and the place searched. United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). "In determining whether a search warrant is supported by probable cause, the crucial element is . . . whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). Courts may infer the existence of probable cause from the circumstances. See Anderson, 851 F.2d at 729. An affidavit may demonstrate a sufficient nexus between the place searched and the items seized through police surveillance linking the residence to suspected drug activity. United States v. Hawkins, 788 F.2d 200, 203-04 (4th Cir. 1986).

---

[2] In his brief, Atkins contended that North Carolina law did not permit the May 28 warrant to be "amended" by the May 29 warrant. (Doc. 17 at 4-5.) However, at the hearing, counsel conceded that the Fourth Amendment, not state law, controls the legality of the search warrants. See Clyburn, 24 F.3d at 616.

6

Here, the May 28 search warrant was supported by sufficient probable cause. The affidavit of Detective Walker notes in great detail the evidence of drug use and trafficking at the residence to be searched. For example, it details several trash pulls from November 2018 through April 25, 2019, which revealed, among other things, a "[s]mall brown marijuana roach/cigarette," scores of clear plastic bags with the corners torn out and some with a "slight white powder residue," "[t]he odor of cocaine," "knotted corner baggies (one with marijuana remnants)," and a "[t]orm open Shield N Seal plastic bag with marijuana inside." (Doc. 16-1.) The affidavit also identifies wire intercepts of Atkins in which he discussed purchasing a kilo of cocaine for $33,000, and surveillance by law enforcement observing Atkins and associates going to and from the Defendant's residence in connection with drug deals. The affidavit also details discussions in which Atkins, a felon, states he has a firearm for his protection. (Id. at 11.) In short, the affidavit provided ample probable cause to believe that Atkins was engaged in drug dealing, with a firearm, and that those items would be found in his residence. Moreover, to the extent Atkins challenges the May 28 warrant as to the failure to specifically list the drugs to be seized, the warrant specifically listed "items evidencing illegal narcotics sales," as well as a firearm. There is no infirmity of constitutional proportion.

Furthermore, the May 29 warrant application provided ample probable cause to believe that Atkins would have evidence of drugs in his residence. The affidavit details that on May 29, 2019, investigators surveilling Atkins's residence in anticipation of executing the May 28 warrant observed Atkins leave his residence in his vehicle. Following a traffic stop, the officers observed Atkins throw out "several ounces of cocaine" from the car. (Doc. 16-2 at 4.) Atkins argues that the discovery of drugs in an automobile is insufficient to support probable cause that drugs will be found in the residence. The court disagrees, particularly given that Atkins had just left his residence and was found with a distribution quantity of cocaine. United States v. Montgomery, 527 F.3d 682, 686 (8th Cir. 2008) (finding probable cause for search of residence where defendant was observed making trips between his residence and a vehicle and his vehicle passenger was found to have two bags of marijuana and one bag of cocaine).

In addition, the affidavit recounts that when law enforcement seized the residence to serve the May 28 warrant, they observed "the odor of marijuana emitting from inside the residence." (Id.) This provided independent probable cause to believe that controlled substances, particularly marijuana, would be found inside. United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) (noting that "the odor of marijuana

8

alone can provide probable cause to believe that marijuana is present in a particular place").

Atkins also argued at the hearing that hemp (which is legal) and marijuana have such sufficiently similar smell and appearance that the officers' observations as to what they saw and smelled noted in the May 28 and 29 affidavits no longer provide probable cause for a conclusion that the substance involved is actually marijuana.[3] During the hearing, Atkins referred to a pronouncement issued by the North Carolina State Bureau of Investigation, although no date was provided, nor was it offered into evidence. Given the long-standing law of this circuit, the court is not persuaded by Atkins's argument. In any event, there are independent grounds for the search, including thr fact that the May 28 affidavit specifically mentions "marijuana" and "cocaine," and the May 29 affidavit specifically refers to the "cocaine" Atkins threw from his vehicle in connection with traffic stop.

Atkins next argues that the issuance of the May 29 search warrant invalidated, or superseded, the May 28 search warrant executed by the Superior Court judge. As the Government points out, however, Atkins provides no authority for this proposition,

---

[3] Atkins mentioned awareness of a recent ruling by another judge of this court that dismissed a case because the Government could not show that the substance in question was marijuana and not hemp. That case is inapposite, as it involved the failure of the Government to carry its burden at trial, not the question of whether probable cause existed.

and the court is aware of none. For the reasons noted above, the search warrant applications for search of the residence were supported by ample probable cause.

Finally, Atkins argued at the hearing that the information in the May 28 application was stale. The Government contends that the ongoing nature of the investigation supports the timeliness of the warrant request. Because the warrants were executed almost immediately after they were issued, the question is whether the information on which the warrant rested was "too old to furnish 'present' probable cause." United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984) (citations omitted). The court's inquiry is whether the facts alleged in the warrant request furnish probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched. Id. There are no "pat formulas or simple rules," and one cannot simply count the number of days between the occurrence of the facts set out and the issuance of the affidavit. Id. (quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)). Rather, the court looks to all the facts and circumstances, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. Id. Many courts have found probable cause despite substantial gaps in time. Id. (citing approval of warrant 4 months after

observing ongoing marijuana cultivation operation; ongoing loansharking; ongoing drug conspiracy). Indeed, in McCall, the Fourth Circuit approved a warrant that sought the search of a residence for a firearm some seven months after it was last observed in the residence. See id. at 1337.

Here, Atkins was subjected to an ongoing and intensifying drug investigation. Trash pulls continued up to April 25, 2019, approximately 30 days before the first warrant request. Wire intercepts starting in late March 2019 further supported an ongoing, long-standing, and extensive drug trafficking operation. "Courts routinely reject staleness arguments in the face of ongoing and continuous criminal activities." United States v. Dowdell, 546 F. App'x 128, 133 (4th Cir. 2013). The evidence in this case strongly supported the reasonable conclusion that the evidence sought would exist at the residence at the time of the warrants.[4] This is especially true of items associated with the distribution of drugs, including papers, records, and receipts. Id. at 134 (finding that the magistrate judge made a "valid inference" that such items would be in the residence as business records are not ordinarily destroyed or moved about). Atkins's staleness argument is rejected.

---

[4] Plainly, the probable cause information observed and recounted in the May 29 search warrant was provided the same day as the warrant request and was timely.

**B. Good Faith Exception**

Atkins argues that if the search warrant is invalid, it cannot be saved by the good faith exception in United States v. Leon, 468 U.S. 897 (1984). Even if the search warrant were invalid, which the court has concluded it was not, the court finds that law enforcement officers acted in good faith and that the Defendant has not met his burden of demonstrating why the exceptions do not apply.

In Leon, the Supreme Court concluded that a court should not suppress evidence procured pursuant to a search warrant, even if it is subsequently invalidated, unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23; accord United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004). "Usually, searches conducted pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Perez, 393 F.3d at 461 (internal quotation marks and citation omitted).

Nevertheless, there are four circumstances in which an officer has "no reasonable grounds for believing that the warrant was properly issued." Leon, 468 U.S. at 923. Suppression remains appropriate if (1) the magistrate or judge

"was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate or judge "wholly abandoned his judicial role"; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. at 923. In conducting a good faith analysis, the court considers both the affidavit and the sworn statements provided to the magistrate in determining whether the officer's reliance on the search warrant was reasonable. United States v. Legg, 18 F.3d 240, 243-44 (4th Cir. 1994).

Atkins has shown none of these. First, he has not shown that the search warrant was based on an affidavit containing knowing or reckless falsities. "With regard to this circumstance, courts have found that the error or omission in the material presented to a magistrate must be significant to the finding of probable cause in order for the good faith exception not to apply." United States v. Jones, 200 F. App'x 229, 230 (4th Cir. 2006) (per curiam). Here, the Government argues that the failure to list cocaine and marijuana was an oversight. That appears to be the case, especially since the items to be seized include "[i]tems evidencing illegal narcotics

sales." (Doc. 16-1.) In any event, there is no contention that any aspect of the affidavit was false.

Second, Atkins presented no evidence that the Superior Court judge neglected his or her proper role as a neutral and detached arbiter and acted as a rubber stamp in issuing the search warrant.

Third, Atkins has not shown that the affidavit did not provide a substantial basis for determining the existence of probable cause. This inquiry focuses on the officer and requires a less demanding showing than the "substantial basis" standard used to review a magistrate or judge's probable cause determination. United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002). For the reasons stated above, the court finds that Atkins fails to carry his burden under even this less demanding standard. Moreover, as to Atkins's argument that what officers observed could have been hemp, apart from the court's rejection of this argument in this context, Atkins provided no evidence to even suggest that such a consideration was evident at the time the warrants were sought.

Finally, Atkins has not demonstrated that the search warrant was so facially defective that an officer could not reasonably rely on it. In applying the fourth circumstance, "courts have looked to whether the warrant provided the executing officer with sufficient indication of the task

required of him." United States v. Cisneros-Mayoral, 129 F. App'x 37, 39 (4th Cir. 2005) (per curiam). In this action, the search warrant and underlying affidavit provided ample basis for executing the warrants based on a lengthy drug investigation of Atkins. The officers' reliance on the warrants issued by North Carolina Superior Court judges was thus objectively reasonable. Perez, 393 F.3d at 461.

## III. CONCLUSION

Having considered all the arguments raised by Defendant Atkins and for the reasons set forth above, the motion to suppress (Doc. 16) is DENIED.

                                                      /s/    Thomas D. Schroeder
                                               United States District Judge

March 16, 2020